PRISCILLA W. LUKE *vs.* MASSACHUSETTS TURNPIKE AUTHORITY & others.

Berkshire. March 4, 1958. — April 8, 1958.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Massachusetts Turnpike Authority. Constitutional Law,* Eminent domain, Public purpose, Highways. *Eminent Domain,* Purpose of taking, Validity of taking, Necessity of taking. *Justiciable Question. Way,* Public: incidental private way, Massachusetts Turnpike; Private: incidental to Massachusetts Turnpike.

The question whether a taking by eminent domain is for a public purpose is a matter for judicial determination; recitals in the order of taking are not conclusive. [308]

The necessity of a taking by eminent domain for a public purpose by the Massachusetts Turnpike Authority, created by St. 1952, c. 354, as "a public instrumentality" whose exercise of the power of eminent domain and the other powers conferred on it by the statute is "deemed . . . to be the performance of an essential governmental function," is a matter for the determination of the authority and is not a judicial question. [308]

A taking by eminent domain by the Massachusetts Turnpike Authority
under St. 1952, c. 354, of a permanent easement in two parcels of land
to construct, maintain, and repair a "private way" with a designated
name for the purpose of providing access to a third parcel which other-
wise would have been left without access to any way by the establish-
ment with "no-access" limitations of the Massachusetts Turnpike as
an express highway by the authority, accompanied by a grant by the
authority of the right to use such "private way" to the owners of the
three parcels and their successors in title, was in furtherance of a
public purpose as an incident of the whole turnpike project and was
not invalid as a taking ostensibly made for a public use but really made
with the intent to divert the property taken to private use. [309–310]

St. 1952, c. 354, authorized the Massachusetts Turnpike Authority, in
furtherance of the whole project of establishing the Massachusetts
Turnpike as an express highway with "no-access" limitations, to take
by eminent domain a permanent easement in certain lands to con-
struct, maintain, and repair a "private way" for the purpose of pro-
viding access to a parcel which otherwise would have been left without
access to any way by the establishment of the turnpike with such
limitations. [310–311]

BILL IN EQUITY, filed in the Superior Court on April 18,
1956.

The suit was reported by *Smith*, J., without decision.

*Frederick M. Myers, Jr.*, for the plaintiff.

*John O. Parker*, (*Norman B. Silk & Richard Ely* with
him,) for the Massachusetts Turnpike Authority.

WILKINS, C.J.   This bill in equity seeks a declaratory
decree as to the validity of a taking by eminent domain by
the defendant Massachusetts Turnpike Authority of a per-
manent easement across land of the plaintiff and land of the
defendants Ford, locating there a private way, and granting
easements in it to the plaintiff and the defendants Powers
and Ford.   The facts were agreed, and the case is here upon
a report without decision.   G. L. (Ter. Ed.) c. 231, § 111.

Prior to the taking, the plaintiff and the defendants
Powers and Ford were respectively owners of three parcels
of land abutting the northerly side of Larrywaug Lee Road,
a public way in the defendant town of Stockbridge.   The
plaintiff's land was bounded on the west by that of Powers
and on the east by that of Ford.   By an order of taking
dated April 28, 1955, the authority took various parcels for

the purpose of constructing, maintaining, repairing, and operating an express toll highway. In this taking were portions of Larrywaug Lee Road and of land of the plaintiff and of the defendants Powers and Ford. Owing to no-access provisions of the taking, St. 1952, c. 354, § 5 (1), the remaining land (approximately sixteen acres) of the defendants Powers was without access to any public or private way. The parcels of the plaintiff and the defendants Ford continued to be located on another public way.

At the same time the authority purported to take a permanent easement across land of the defendants Ford and of the plaintiff to provide access to the remaining Powers land, and to grant easements therein to the defendants Powers and Ford and the plaintiff. The order, so far as material, is as follows: "Also in connection with the construction, maintenance, repair, and operation of the express toll highway hereinbefore described, it is necessary to locate a private way in the town of Stockbridge, said way being deemed necessary by the Massachusetts Turnpike Authority for carrying out the provisions of chapter 354 of the Acts of 1952. The taking for this purpose (hereinafter referred to sometimes as the Powers' Drive taking) is for providing access to and egress from land which otherwise would become isolated due to the no-access provisions of the express toll highway taking and is located northerly of the aforesaid express toll highway. . . . Permanent easements are hereby taken, in behalf of the Massachusetts Turnpike Authority, in two parcels of land included within the limits of the Powers' Private Way taking, hereinbefore described, and designated on the plan of said taking as Parcel E–111 [of the plaintiff] and Parcel E–112 [of the defendants Ford], said easements consisting of the right to construct, maintain, and repair a private way deemed necessary by the Massachusetts Turnpike Authority for carrying out the provisions of chapter 354 of the Acts of 1952, including, without limiting the scope of the foregoing, the right to use such land for all purposes for which a public way may be used in the town of Stockbridge. . . . An easement is hereby granted in the

Powers Private Way taking . . . to the following named owners of land and to any other owners whose rights of access thereto and egress therefrom would otherwise become inoperative due to the no-access provisions . . . James A. and Agnes Shirley Powers, their heirs and assigns, Priscilla M. Luke, her heirs and assigns, Henry W. and Marjorie Olcott Ford, their heirs and assigns. Said easement consists of the right to construct . . . utility facilities . . . and to use said land for all purposes for which a public way may be used in the town of Stockbridge."

The plaintiff contends that the taking of the private way was beyond the power granted the authority by the Legislature; and in the alternative, if the Legislature did purport to grant such power, the grant was unconstitutional as violating art. 10 of the Declaration of Rights. It is convenient to consider the contentions together.

The purpose of St. 1952, c. 354, as stated in its title, is "the construction, maintenance, repair and operation of a self-liquidating express highway from a point in the vicinity of the city of Boston to a point at or near the New York State line." To accomplish this purpose the statute sets up the authority as "a public instrumentality" a body politic and corporate to consist of three members to be appointed by the Governor with the advice and consent of the Council. § 3. The authority is authorized and empowered to construct, maintain, repair, and operate the proposed highway as a toll express highway, to be known as the Massachusetts Turnpike, between the termini as stated in the title and at such location as may be approved by the State department of public works. § 1. *Opinion of the Justices*, 330 Mass. 713, 714. The "exercise by the authority of the powers conferred by this act . . . shall be deemed and held to be the performance of an essential governmental function." § 3. "The word 'turnpike' shall mean the express toll highway . . . together with all property, rights, easements and interests which may be acquired by the authority for the construction or the operation of the turnpike." § 4 (b). The authority is empowered (§ 5): "(f) To acquire sites

abutting on the turnpike and to construct or contract for the construction of buildings and appurtenances for gasoline stations, restaurants and other services . . .; (k) To acquire in the name of the authority . . . by the exercise of the power of eminent domain in accordance with the provisions of chapter seventy-nine of the General Laws . . . any fee simple absolute or any lesser interest in such private property as it may deem necessary for carrying out the provisions of this act, including any fee simple absolute in, easements upon, or the benefit of restrictions upon, abutting property to preserve and protect the turnpike . . . ." "This act, being necessary for the welfare of the commonwealth and its inhabitants, shall be liberally construed to effect the purposes thereof." § 19.

The plaintiff attacks the recitals in the order, and asserts that the easement has no "legitimate purpose in connection with the turnpike itself," and has nothing to do with the "construction, maintenance, repair and operation" of the highway, or its preservation or protection. She declares that "the turnpike is as safe without the taking as with it." We agree that the recitals are not conclusive. Whether the taking is for a public purpose is a subject for judicial examination. *Boston* v. *Talbot,* 206 Mass. 82, 89–90. *Burnham* v. *Mayor & Aldermen of Beverly,* 309 Mass. 388, 390. *McAuliffe & Burke Co.* v. *Boston Housing Authority,* 334 Mass. 28, 30. And if the taking is for a public purpose, the necessity for the appropriation is not a judicial question, but a legislative one, irrespective of whether the determination was by the Legislature or by public officers to whom the Legislature has delegated the power. *Tate* v. *Malden,* 334 Mass. 507, 508. *Hayeck* v. *Metropolitan District Commission,* 335 Mass. 372, 375. *Court Street Parking Co.* v. *Boston,* 336 Mass. 224, 230. The authority stands on the same footing in this respect as public officers. See St. 1952, c. 354, § 3. Contrary to the plaintiff's contention, the authority is not "essentially a private company." It is a "public corporation." *Opinion of the Justices,* 330 Mass. 713, 719.

The plaintiff stresses the language in the order that the "Powers Private Way" was to provide "access to and egress from" the Powers property. Her brief contains statements that she herself has received no benefit, because she had been the owner of parcel E-111; and that the Ford property received no benefit, because it is located on a public way. These statements are not strictly correct, since, for whatever the right may be worth, the way gives both the plaintiff and the defendants Ford access to Larrywaug Lee Road in its new location.

That the power of eminent domain may be exercised only for a public purpose is elementary law. That private property cannot be seized ostensibly for a public use and then diverted to a private use is likewise a well settled principle. *Machado* v. *Board of Public Works of Arlington,* 321 Mass. 101, 103. *Sellors* v. *Concord,* 329 Mass. 259, 261. But this principle is without application where the property taken is sold or disposed of in furtherance of a public purpose. *McLean* v. *Boston,* 327 Mass. 118, 121. *Opinion of the Justices,* 321 Mass. 766, 770. *Opinion of the Justices,* 330 Mass. 713, 724.

The "Powers Private Way" is, of course, located in the permanent easement taken by the authority. If the easement or the private way should be viewed in the abstract, no public purpose would appear. Such an approach, however, would be closing the eyes to reality. The laying out of the turnpike the length of the Commonwealth and the acquisition of numerous sites essential to that object are attributes of one huge undertaking. Procuring an easement and creating a right of way for the benefit of parcels of land incidentally deprived of all or of some means of access to an existing way are but a by-product of that undertaking. The authority was not engaged in a "roving commission." See *Opinion of the Justices,* 330 Mass. 713, 725. The real and dominating purpose of the statute is the building and operation of the turnpike. *Allydonn Realty Corp.* v. *Holyoke Housing Authority,* 304 Mass. 288, 295. *Opinion of the Justices,* 320 Mass. 773, 780. The judgment of the authority

must have been that the course of the turnpike where it has been laid out and constructed through Stockbridge was for the best interests of the Commonwealth and its inhabitants. This having been determined, no countervailing legal considerations appearing, the authority was not compelled to attempt a new location of the highway, perhaps over a length of miles, in order to discover, if possible, another route which would not incidentally result in one or more landlocked parcels. Nor was the authority in the position of having to take the entire Powers land so as to avoid the present controversy. There would have been, in that event, the possibility that the same or other contentions might have to be faced; such as (1) that more land was taken than was needed for the project (see art. 10 of the Declaration of Rights as amended by art. 39 of the Amendments), or (2) if the unneeded sixteen Powers acres should be sold, that their land was taken for the private benefit of the buyer, somewhat as is here argued by the plaintiff. Compare *Wright* v. *Walcott*, 238 Mass. 432.

In support of the contention that St. 1952, c. 354, did not authorize the authority to take the easement in her land, the plaintiff refers to G. L. (Ter. Ed.) c. 81, § 7A, as appearing in St. 1948, c. 448,[1] which authorizes the department of public works to take by eminent domain "easements in land outside the location of limited access state highways . . . in behalf of those owners of land abutting said highways, whose rights of access to and egress from their land, and any other rights necessary to make the same available for use, will become inoperative due to the construction of said highway." We do not agree that the absence of precisely similar language in St. 1952, c. 354, is indicative of a legislative policy limiting the authority's powers as to taking easements in the performance of this "essential governmental function." This would hardly be the liberal construction directed by § 19. We think that § 5 (k) is broad enough to authorize the order of taking here in issue, and

---

[1] The amendment by St. 1951, c. 453, is immaterial.

that its scope is not limited by the enumeration of certain powers in § 5 (f). We do not agree that the Legislature intended to leave the solution of this problem created by the taking solely to local officials.

The authority has not attempted to lay out the type of public way, called "private way," discussed in *Flagg* v. *Flagg*, 16 Gray, 175. See G. L. (Ter. Ed.) c. 82, §§ 21, 22. It has taken "[p]ermanent . . . easements consisting of the right to construct, maintain, and repair a private way . . . including . . . the right to use . . . for all purposes for which a public way may be used . . . ." The grant of easements to the plaintiff and to the defendants Powers and Ford did not exhaust the rights which the authority has taken. We need not decide whether the public can be excluded in the discretion of these three owners of dominant estates, or whether such action would violate the rights taken by the authority, which holds the easement as part of the turnpike defined in § 4 (b). That the authority undertook to give the way a name, or that the number of probable users is not large does not invalidate the taking. *Denham* v. *County Commissioners of Bristol*, 108 Mass. 202.

A decree is to be entered declaring that the taking of an easement across the land of the plaintiff and of the defendants Ford, and the granting of easements to the plaintiff and to the defendants Powers and Ford are valid.

*So ordered.*