NORTH CAROLINA STATE HIGHWAY COMMISSION v. ASHEVILLE SCHOOL, INC.

No. 6928SC132

(Filed 27 August 1969)

1. **Eminent Domain § 3—    condemnation to provide private driveway—public use — landlocked property**

Condemnation of property by the Highway Commission for the sole purpose of providing a private driveway into adjoining property which had been landlocked as the result of the construction of a controlled access freeway *is held* to constitute a taking for a public purpose, where the driveway was constructed in connection with the freeway project and not as

a separate and distinct project completely unrelated to any public undertaking, and since the landlocking of the property was a damage to the owners thereof, which, if not repaired, would have entitled them to compensation. G.S. 136-19.

**2. Eminent Domain § 1— power of Highway Commission**

As a state agency the Highway Commission possesses the power of eminent domain for the purpose of acquiring property and property rights necessary to carry out its designated functions. G.S. Ch. 136.

**3. Eminent Domain § 3— authority of Highway Commission — condemnation for public use**

G.S. Ch. 136 does not vest in the Highway Commission the right to acquire property except for public use; nor could it do so without being in violation of both the State and Federal Constitutions.

**4. Eminent Domain § 3— public use — judicial question**

What is a public use is a judicial question to be decided by the court as a matter of law.

**5. Eminent Domain § 3— what constitutes a public use**

What constitutes a public use of such a nature as to subject property to eminent domain is incapable of a precise and comprehensive definition applicable to all cases, but each case must be evaluated in the light of its peculiar circumstances and the then current opinion as to the proper function of government.

**6. Eminent Domain §§ 3, 7— damage caused by highway project— duty to repair — public purpose**

The Highway Commission has the responsibility of repairing, whenever possible, damage caused by a highway project, and it is not precluded by the law or Constitution from making reasonable use of land acquired for the project in doing so.

**7. Eminent Domain §§ 7, 14— consent order between Commission and landowner — rights acquired — res judicata**

Where terms of consent order between Highway Commission and landowner adjudged that the Commission was entitled to acquire, and did acquire, the interest and areas over the landowner's property described in the order, the consent order involved a substantial right and was *res judicata* on the issue of Commission's right to condemn the property, and trial court had no authority to permit an amendment to the answer of defendant denying that right or to hear testimony or to consider stipulations relating to that or any other issue which had already been decided by the consent order.

**8. Judgments § 21— attack on consent order — grounds for setting aside**

A consent order cannot be modified or set aside without consent of the parties except for fraud or mistake.

**9. Judgments § 21— attack on consent order — burden of proof**

The burden is on the party attacking a consent order to allege facts showing that because of fraud, mutual mistake or lack of consent it is entitled to relief.

**10. Pleadings § 33— amendment to pleading — scope of discretionary power**

The right to permit amendments to pleadings is an inherent and statutory power of superior courts which they may ordinarily exercise at their discretion; but this right is not unlimited, and does not extend to amendments which change a cause of action or set up a wholly different cause of action, nor does it permit amendments as a matter of discretion where prohibited by statute or where vested rights are involved.

**11. Eminent Domain §§ 7, 14— rights acquired by Commission in land — consent order — landowner's motion to amend answer**

Trial court had no discretionary authority to permit landowner to amend its answer so as to challenge the authority of the Commission to acquire rights in landowner's property for highway purposes, where such authority had been admitted in landowner's answer and had been confirmed by a consent order entered into by the Commission and the landowner, and where the Commission had acquired the rights more than four years before landowner moved to amend.

**12. Eminent Domain § 7— attack on land acquisition — landowner's acceptance of benefits**

Where landowner withdrew the amount paid into court by the Highway Commission as its estimate of just compensation for all of landowner's property and enjoyed the use of the money for almost four years, landowner is now precluded from attacking the Commission's authority to condemn the property in question.

APPEAL by plaintiff from *McLean, J.,* 14 Ocotber 1968 Civil Session of BUNCOMBE Superior Court.

The plaintiff Highway Commission instituted this proceeding for the condemnation of approximately 5.78 acres of defendant's land by the filing of complaint, declaration of taking and notice of deposit on 11 May 1964 pursuant to G.S. 136-19 and G.S. 136-103. The taking was allegedly for public use in connection with highway project 8.19095, Buncombe County, which project included construction of Interstate Highway 40. The defendant was served on 12 May 1964 and on 21 May 1964 withdrew from the Superior Court of Buncombe County $4,300.00 that had been deposited by the plaintiff as its estimate of just compensation for the taking.

After receiving extensions of time, the defendant answered on 11 November 1965 and admitted the essential elements of the complaint except for the amount of compensation. On 20 October 1966 a consent order was filed purporting to determine all issues other than damages and adjudging that the State Highway Commission was entitled to acquire, and did acquire on 11 May 1964, the interest sought in defendant's land. On 10 May 1968, almost four years after the taking was adjudged to have occurred, the defendant filed a motion

to amend its answer and to deny that it was necessary to condemn and appropriate for public purposes a certain portion of defendant's property lying east of the property line of C. A. Mashburn and to allege that the appropriation was for a private purpose in that it was for the construction of a driveway from the Mashburn property to relocated Sand Hill Road. The motion to amend was allowed by Judge McLean on 11 June 1968. On 16 October 1968, also by order of Judge McLean, the plaintiff was permitted to amend its complaint and declaration of taking to allege that the original taking, in addition to being pursuant to G.S. 136-19 *et seq.*, was also pursuant to the provisions of G.S. 136-18, G.S. 136-54 and G.S. 136-89.48 through G.S. 136-89.58 and pursuant to a resolution passed by the plaintiff. On 16 October 1968 the plaintiff, with the consent of the defendant, added as additional grounds for its condemnation of defendant's lands G.S. 136-18(16) and the defendant answered, alleging that if G.S. 136-18(16) purports to give the plaintiff the power to condemn excess lands beyond those necessary for right-of-way or for maintenance of right-of-way purposes, it is an unconstitutional delegation of power to plaintiff and violates Section 17, Article I of the Constitution of North Carolina and the Fourteenth Amendment to the Constitution of the United States.

The parties entered into stipulations that in substance established that on 10 February 1964 C. A. Mashburn and wife indicated to the plaintiff Highway Commission that they would probably accept the Commission's offer of $8,300.00 for right-of-way needed for project 8.19095 if their driveway was relocated on property belonging to the defendant. On 3 June 1964 a written agreement was entered between the plaintiff and the Mashburns conveying to the plaintiff the needed right-of-way and containing the following pertinent language:

"It is further agreed herein that the undersigned grants to the State Highway Commission the right to enter upon their lands outside of the right of way to the extent as is necessary to relocate and construct the undersigneds' drive. . . . Said drive is to be 12 ft. in width, approx. 105 ft. in length, and will be surfaced with crushed stone. The drive shall be constructed and connected to the Sand Hill Road as is shown upon the plans in the State Highway Commission office in Raleigh, N. C. . . .

". . . This conveyance is made for the purposes of a freeway and the grantor hereby releases and relinquishes to the

grantee any and all abutter's rights of access, appurtenant to grantor's remaining property, in and to said freeway."

The parties further stipulated that had not the plaintiff utilized a portion of the land acquired from the defendant for the construction of a driveway to the Mashburns' property, the property would be landlocked as a result of Highway Project 8.19095, and that the reason the property in question was condemned was to provide access to the Mashburns' property from relocated Sand Hill Road.

A hearing was held before the Honorable W. K. McLean, Judge Presiding at the 14 October 1968 Session of Buncombe County Superior Court, for the purpose of determining the issues raised by the pleadings. The court heard testimony, found facts as stipulated to by the parties and in addition entered findings to the effect: (1) The tract of land in question was not taken for use in Highway Project 8.19095; (2) the driveway serves only the lands of Mashburn and is not a public or state maintained road; (3) the plaintiff moved to amend its answer immediately upon learning that a private driveway was to be constructed on its lands that had been acquired for a public purpose; (4) the defendant entered into the consent order of 20 October 1966 in good faith, relying on plaintiff's allegations and having no knowledge that its lands were to be used for other than a public purpose.

Upon its findings of fact, the court concluded that the disputed area was not taken for a public purpose but for a private purpose; that G.S. 136-18(16) is unconstitutional insofar as it attempts to give plaintiff the right to condemn lands in excess of those necessary for actual use in the right of way of any highways described in plaintiff's complaint; and that defendant waived none of its rights to contest the purported condemnation. The court thereupon ordered and decreed that the plaintiff did not acquire title to the disputed area by the institution of this action; that the consent order be amended to conform to the findings of fact and conclusions of law of the court, and that plaintiff return dominion and control of the land in question to the defendant. The plaintiff excepted to the court's findings of fact and conclusions of law and appealed.

*Attorney General Robert Morgan, Deputy Attorney General Harrison Lewis and Trial Attorney I. B. Hudson, Jr., for the State.*

*Bennett, Kelly & Long, by Harold K. Bennett, for defendant appellee.*

PARKER, J.

**[1]** The plaintiff's exceptions and assignments of error raise the following question: Was the taking of the property in question in connection with a controlled access highway project and for the sole purpose of providing a private driveway into property that had been landlocked by the same project, a taking for a "public use"?

We note that the disputed area contains .074 acres of the 5.78 acres of new right-of-way which the plaintiff is seeking to acquire from a tract of defendant's land consisting of some 277 acres. Irrespective of the size or value of land taken, however, "(i)t is not a trivial thing to take another's land." *City and County of San Francisco v. Grote,* 120 Cal. 59, 52 P. 127. As stated by Lake, J., in *Highway Commission v. Thornton,* 271 N.C. 227, 241, 156 S.E. 2d 248, 259:

> "It is not a sufficient answer that the landowner will be paid the full value of his land. It is his and he may not be compelled to accept its value in lieu of it unless it is taken from him for a public use. To take his property without his consent for a nonpublic use, even though he be paid its full value, is a violation of Article 1, Sec. 17 of the Constitution of this State and of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States."

**[2]** Chapter 136 of the North Carolina General Statutes vests in the plaintiff Highway Commission broad discretionary powers in establishing, constructing, and maintaining highways as a part of a statewide system, including the power to establish controlled access facilities. As a state agency the plaintiff Highway Commission possesses the power of eminent domain for the purpose of acquiring property and property rights necessary to carry out its designated functions. An illustration of the authority granted to the plaintiff is G.S. 136-19 which provides in part:

> "The State Highway Commission is vested with the power to acquire either in the nature of an appropriate easement or in fee simple such rights of way and title to such land, . . . as it may deem necessary and suitable for road construction, maintenance, and repair, and the necessary approaches and ways through, and a sufficient amount of land surrounding and adjacent thereto, as it may determine to enable it to properly prosecute the work, either by purchase, donation, or condemnation, in the manner hereinafter set out."

**[3, 4]** It is agreed, however, that Chapter 136 does not vest in

the plaintiff the right to acquire property except for public use; nor could it do so without being in violation of both our State and Federal Constitutions. What is a public use is a judicial question to be decided by the court as a matter of law. *Charlotte v. Heath,* 226 N.C. 750, 40 S.E. 2d 600.

[5]   What constitutes a public use of such a nature as to subject property to condemnation by a sovereign or its agent is incapable of a precise and comprehensive definition applicable to all cases. Each case must be evaluated in the light of its peculiar circumstances and the then current opinion as to the proper function of government. *Highway Commission v. Thornton, supra; Highway Commission v. Batts,* 265 N.C. 346, 144 S.E. 2d 126.

The defendant insists that this case is controlled by the decision in *Highway Commission v. Batts, supra.* There the State Highway Commission sought to condemn a portion of defendant's property for use in the construction of a road to extend 3,316 feet from Secondary Road 1717 and end in a *cul-de-sac* at a point in the property of J. M. Batts. The Supreme Court held that the taking was for a private purpose in view of uncontradicted evidence that at the time the taking was initiated only three buildings fronted on the proposed road with a fourth being added thereafter and that the buildings were occupied by W. M. Batts and wife, and a few relatives; and the further fact that there was no showing that the road was required by a public necessity, convenience or utility.

[1, 6]   When viewed in the abstract the use of defendant's property for the construction of the Mashburn driveway appears to be even less of a public use than was present in the *Batts* case. The distinction, however, is that here the Highway Commission constructed for the Mashburns a road or driveway in connection with project 8.19095, and not as a separate and distinct project completely unrelated to any public undertaking. The 5.78 acres of defendant's land was appropriated for use in connection with project 8.19095. There is no question but that this project, which includes the construction of a controlled access freeway (I-40), was an undertaking of great public importance and that the plaintiff had the authority to procure by condemnation such rights-of-way or lands as were necessary to properly prosecute and complete the project. *Browning v. Highway Commission,* 263 N.C. 130, 139 S.E. 2d 227. Most of the land acquired from the defendant was for use within the controlled access area of I-40. The .074 acres that is in dispute was used for the purpose of providing access to the Mashburn property which had been completely landlocked by the Highway Project. The ques-

tion is presented: Was this use such a deviation from the duties and responsibilities of the plaintiff in connection with project 8.19095 as to remove it from within the scope of the project? We think it was not. Certainly the plaintiff has the responsibility of repairing, whenever possible, damage caused by a highway project, and it is not precluded by the law or Constitution from making reasonable use of land acquired for the project in doing so. The landlocking of the Mashburns' property was a damage to them, which if not repaired, would have entitled them to compensation. *Highway Commission v. Phillips*, 267 N.C. 369, 148 S.E. 2d 282; *Snow v. Highway Commission*, 262 N.C. 169, 136 S.E. 2d 678. It is obvious that in the agreement with the Mashburns, the plaintiff undertook to repair the damage rather than to pay compensation for it. We are of the opinion and so hold that in using a reasonable amount of land acquired from the defendant for this purpose the plaintiff was acting within its statutory and constitutional authority.

In 2 Nichols, Eminent Domain, § 7.51211, it is stated at page 716:

> "Procuring an easement and creating a right of way for the benefit of parcels of land incidentally deprived of all or of some means of access to an existing way by reason of the construction of a turnpike, throughway, freeway or other limited access highway has been held to be for a public use."

Decisions by courts in a majority of states where similar condemnation proceedings have been challenged are in accord with our holding here. *Luke v. Massachusetts Turnpike Authority*, 337 Mass. 304, 149 N.E. 2d 225; *May v. Ohio Turnpike Commission*, 172 Ohio St. 555, 178 N.E. 2d 920; *Tracey v. Preston*, 172 Ohio St. 567, 178 N.E. 2d 923; *State High. Com'r. v. Totowa Lumber & Sup. Co.*, 96 N.J. Super. 115, 232 A. 2d 655; *Mississippi State Highway Commission v. Morgan*, 253 Miss. 398, 175 So. 2d 606; *Sturgill v. Commonwealth, Department of Highways (Court of Appeals of Kentucky)*, 384 S.W. 2d 89; *Andrews v. State (Indiana)*, 229 N.E. 2d 806. The First District Court of Florida reached a contrary conclusion in a two to one decision. *Brest v. Jacksonville Expressway Authority (Dist. Ct. of Appeals of Florida)*, 194 So. 2d 658.

In *Luke v. Massachusetts Turnpike Authority, supra,* the Massachusetts court considered the taking of property from the plaintiff to provide private access into property belonging to one Powers. In holding that the taking did not under the circumstances constitute a taking for private use the court stated:

> "The 'Powers private way' is, of course, located in the permanent easement taken by the Authority. If the easement

or the private way should be viewed in the abstract, no public purpose would appear. Such an approach, however, would be closing the eyes to reality. The laying out of the turnpike the length of the commonwealth and the acquisition of numerous sites essential to that object are attributes of one huge undertaking. Procuring an easement and creating a right-of-way for the benefit of parcels of land incidentally deprived of all or of some means of access to an existing way are but a by-product of that undertaking."

In *Andrews v. Indiana, supra,* the plaintiff contested the taking of his property to provide access to the property of one Baldwin whose property had been landlocked by the construction of an Interstate Highway. The court stated:

"In truth and in fact, we must conclude that a service road would alleviate a landlocked condition of the Baldwin property and would certainly have the effect of reducing the amount of damages payable to the Baldwins. If the State of Indiana is not in a position to minimize the damages paid to landowners, then the cost of Interstate Highways would soar astronomically and Indiana would be dotted abnormally with landlocked real estate."

In light of the language of the *Andrews* case we note that in this case one of the witnesses for the State Highway Commission testified that "all we paid Mashburn was $8,300.00. Possibly we would have had to pay him $40,000.00 if ·we hadn't taken the property from Asheville School."

[1]    Though we hold that it was error for the court below to find that the defendant's land in question was taken for a private purpose, we do so apart from any consideration of the constitutionality of G.S. 136-18(16). In our opinion this case does not involve an exchange of property under the provisions of that particular statute. In our opinion G.S. 136-19 vests in the Highway Commission ample authority for the taking here in question as this taking was necessary in order for it to "properly prosecute the work" involved with project 8.19095.

The plaintiff also challenges the court's findings and conclusions that the defendant waived none of its rights to contest the condemnation of the area in question, contending that the consent order could be attacked only for fraud, mutual mistake or lack of consent; and further, that the defendant's withdrawal of plaintiff's deposit of estimated compensation precluded its later denial of plaintiff's authority to appropriate the land in question.

**[7, 8]**   Under the terms of the consent order entered in this cause on 20 October 1966 it was adjudged that the plaintiff was entitled to acquire, and did acquire, on the 11th day of May, 1964, the interest and areas over the lands of defendant described in the order and including the area now under dispute. This consent order purporting to finally settle and adjudicate this essential issue was in effect the contract of the parties entered with the approval and sanction of the court, and it could not thereafter be modified or set aside without consent of the parties except for fraud or mistake. *King v. King,* 225 N.C. 639, 35 S.E. 2d 893; *Keen v. Parker,* 217 N.C. 378, 8 S.E. 2d 209. "While the court has the power to change an interlocutory order or judgment while the action is pending, if such judgment is by consent, the court can change it only by the consent of the parties, or upon motion or petition showing the existence of circumstances of fraud or mistake." 2 McIntosh, N.C. Practice 2d, § 1684. The defendant herein made no motion to modify or vacate the consent order on the grounds specified above but sought by amending its answer to raise the very issues which had been adjudicated by the consent order. As long as the consent order remained in effect, it was res judicata on the issue of the plaintiff's right to condemn the defendant's property, and the court had no authority to permit an amendment to the answer denying that right or to hear testimony or to consider stipulations relating to that or any other issue which had already been decided by the consent order. *Highway Commission v. Nuckles,* 271 N.C. 1, 155 S.E. 2d 772. The consent order in question was not an incidental order relating to the progress of the trial and subject to being stricken or modified. It involved a substantial right. "A decision which disposes not of the whole, but merely of a separate and distinct branch of the subject matter in litigation" is final in nature. 4 Am. Jur., 2d, Appeal and Error, Sec. 53.

**[9-11]**   The defendant in its motion to amend answer filed 10 May 1968 made no mention of the consent order filed on 20 October 1966. It did not move to vacate or modify the order, nor did it allege facts to show that because of fraud, mutual mistake or lack of consent it was entitled to relief from its "contract" with the plaintiff. The burden was clearly on the defendant to do so. Strong, N.C. Index 2d, Judgments § 21. The court's order allowing the amendment likewise makes no mention of the consent order but purports to grant the motion "in its discretion." It is true that the right to permit amendments to pleadings is an inherent and statutory power of superior courts which they may ordinarily exercise at their discretion. G.S. 1-163; *Gilchrist v. Kitchen,* 86 N.C. 20. But this right is not

unlimited. It does not, for instance, extend to amendments which change a cause of action or set up a wholly different cause of action. *Thompson v. R. R.*, 248 N.C. 577, 104 S.E. 2d 181. Neither does it permit amendments as a matter of discretion where prohibited by some statutory enactment or where vested rights are involved. *Highway Commission v. Hemphill*, 269 N.C. 535, 153 S.E. 2d 22. The Highway Commission here had acquired the rights which it . sought in the defendant's property more than four years before the defendant moved to amend its answer and question the authority of the Commission. Its authority to do so had been admitted in defendant's answer filed 1 November 1965 and it had been confirmed by the consent order of 20 October 1966. An amended answer resurrecting an issue that had been so long settled and one that was so vital to the plaintiff and to the public was without question "an amendment effecting vested rights." As such it was beyond the discretionary authority of the trial judge to allow it.

[12]    Furthermore, the defendant's withdrawal of the amount paid into court by the plaintiff as its estimate of just compensation precluded the attack now attempted on the plaintiff's authority to condemn the property in question. The deposit was for all of the property, not just the portion which the defendant admits the plaintiff had the right to take. The defendant enjoyed the use of the money for almost four years before attempting to deny the plaintiff's authority to take the land in question. None of the deposit has been returned. The defendant may not accept benefits while attacking the source from which the benefits are derived. *City of Durham v. Bates*, 273 N.C. 336, 160 S.E. 2d 60; *Highway Commission v. Matthis*, 2 N.C. App. 233, 163 S.E. 2d 35.

The order appealed from is vacated and this cause remanded for further proceedings not inconsistent herewith.

Reversed and remanded.

MALLARD, C.J., and BRITT, J., concur.