NORTH CAROLINA STATE HIGHWAY COMMISSION v. ASHEVILLE SCHOOL, INC.

No. 24

(Filed 13 May 1970)

1. **Eminent Domain § 3; Highways and Cartways § 1— public purpose — private road**

The Highway Commission can condemn property only for a public purpose and cannot take the land of one property owner for the sole purpose of constructing a road for the private use of another.

2. **Eminent Domain § 3— public or private purpose — question for courts**

When the facts are determined, the question of whether a proposed road will serve a public or private purpose is one of law for the courts.

3. **Eminent Domain § 1; Highways and Cartways § 4— access road for landlocked property — "frontage road"**

Road constructed by the Highway Commission to provide access to private property which would otherwise be landlocked by construction of a controlled-access highway is a "frontage road" within the meaning of G.S. 136-89.52. G.S. 136-89.49.

4. **Eminent Domain § 3— public or private purpose — incidental private benefit**

The exercise of the power of eminent domain for a public purpose which is primary and paramount will not be defeated by the fact that inci-

dentally a private use or benefit will result which would not of itself warrant an exercise of the power.

**5. Eminent Domain § 3— condemnation to provide access to property landlocked by highway construction — public purpose — statutory authority**

Condemnation of land by the State Highway Commission to provide access to private property which otherwise would have been landlocked by the Highway Commission's construction of a controlled-access interstate highway was for a public purpose and was authorized by G.S. 136-19, G.S. 136-89.49 and G.S. 136-89.52.

MOORE, J., did not participate in the consideration or decision of this case.

APPEAL by defendant under G.S. 7A-30(1) to review the decision of the Court of Appeals (5 N.C. App. 684, 169 S.E. 2d 193) reversing judgment of *McLean, J.,* 14 October 1968 Civil Session of BUNCOMBE, docketed and argued in the Supreme Court as Case No. 42 at the Fall Term 1969.

Plaintiff, North Carolina State Highway Commission, instituted this action on 11 May 1964 to condemn seven separate areas, totaling approximately 5.6 acres and contained within a 277-acre tract belonging to defendant. In its complaint and declaration of taking plaintiff asserted: (1) Those portions of defendant's property, shown on plan sheets 12, 13, 14, and 15-A attached to the complaint, are required for the construction of State Highway Project 8.19095. (This project involved the construction of a section of Interstate Highway No. 40 and the relocation of the Sand Hill Road to overpass it.) (2) Plaintiff condemns the described lands under the authority of G.S. 136-19 and G.S. 136-103 *et seq.* and takes a "fee simple title to right of way and additional easement, in perpetuity, for construction for all purposes for which the plaintiff is authorized by law to subject the same." Access is controlled and limited solely to the points designated on the plan sheets. (3) Plaintiff's estimate of just compensation for the land taken is $4,300.00 which has been deposited to defendant's credit with the Clerk of the Superior Court of Buncombe County.

Thereafter defendant withdrew the deposit and filed answer admitting all material allegations of the complaint but alleging its damage to be $30,000.00.

A consent order was entered by Anglin, J., on 20 October 1966 adjudging (1) that all issues other than the issue of damages had been resolved by consent of the parties; (2) that the State Highway Commission acquired a fee simple title to tracts 1-6 and a drainage easement in the seventh tract; and (3) that access was fully con-

trolled on new right-of-way tracts 3, 4, and 6 and on that portion of new right-of-way tract 5 lying south of a line marked "C/A" (controlled access) as shown on the official map of the project.

Tract No. 5 is the southeastern corner of defendant's property and contains .335 acres. This appeal, however, involves only that portion of tract 5 (containing .074 acres) which lies north of the line C/A, the shaded area on the illustrative map inserted in this opinion. The approximate dimensions of the area are 40 x 90 x 50 x 100 feet.

It is established by stipulation that C. A. Mashburn owned 1.5 acres adjoining the southeast corner of defendant's lands. On this tract is located the Mashburn one-family residence. Plaintiff required that portion of the Mashburn property lying south of the line C/A for Project 8.19095, the area within the heavy black lines on the illustrative map. The only access to the Mashburn property was a driveway through this area to the Sand Hill Road. The condemnation of the area within the heavy black lines would leave the remaining Mashburn tract landlocked.

On 3 June 1964, in consideration of $8,300.00 and plaintiff's agreement to relocate their driveway and a waterline, Mr. and Mrs. Mashburn conveyed to plaintiff the property within the heavy black lines. The conveyance specified that the relocated driveway would be 12 feet in width, approximately 105 feet long, surfaced with crushed stone and connected with Sand Hill Road. There was no other written agreement between plaintiff and the Mashburns, and there has been no conveyance of any lands or easement from plaintiff to the Mashburns. Plaintiff constructed the driveway over the hatched portion of tract 5 as shown on the illustrative map. Had not plaintiff utilized that part of tract 5 as an access road the Mashburn property would have been completely landlocked, and plaintiff's evidence tended to show it would have had to pay the Mashburns about $40,000.00 for their property.

On 10 May 1968 defendant moved for permission to amend its answer in order to allege: That part of tract 5 lying north of line C/A and east of the Mashburn property line was not required for a public purpose; it was taken for a private purpose "in that the same was appropriated to provide the said C. A. Mashburn with a private driveway leading across the property of this defendant . . . ." Judge McLean allowed the amendment on 11 June 1968. By this amendment defendant attempted, for the first time, to challenge plaintiff's power to condemn a portion of its property.

Thereafter plaintiff amended its complaint and declaration of

HIGHWAY COMM. *v.* SCHOOL

taking to allege that it proceeded in this action under the authority of G.S. 136-19 *et seq.*, G.S. 136-18, G.S. 136-54, and G.S. 136-89.48 through G.S. 136-89.58. In a reply to the amended answer it alleged, *inter alia:* (1) When defendant withdrew the deposit on 21 May 1964 it had knowledge that plaintiff was taking the land for the purpose of providing access to the Mashburn lands, and by the withdrawal it waived any right to contest the propriety of the taking; and (2), having waited three and a half years after the completion of the driveway before amending its answer, defendant is barred by its laches from contesting plaintiff's right to take the land.

Subsequently, defendant amended its answer to allege that if G.S. 136-18(6) "purports to give plaintiff the power to condemn excess lands beyond those necessary for use in the road right of way or for maintenance. . . ." the same is unconstitutional and a violation of § 17, Article I of the Constitution of North Carolina and the Fourteenth Amendment to the Constitution of the United States.

On 14 October 1968 Judge McLean heard this matter upon stipulations and evidence offered by both parties. In addition to facts substantially as detailed above, he found the following: (1) That portion of tract No. 5 north of the line C/A is not necessary for the maintenance or lateral support of the relocated Sand Hill Road. (2) The only reason plaintiff attempted to condemn that area was to provide access to the Mashburn property from relocated Sand Hill Road. (3) Defendant had no knowledge of the use to which plaintiff intended to put the area in dispute at the time it filed answer or on 20 October 1966, the date of the consent order settling the issues. Judge McLean concluded as a matter of law that the disputed area was not needed for a public purpose, and the taking was therefore unconstitutional. He also adjudged (1) that defendant was not bound by the consent order of 20 October 1966 and that it had not waived its "right to oppose the taking of its property for private purposes"; and (2) that plaintiff had not acquired title to the disputed area. Whereupon, he ordered plaintiff "to return dominion and control of said lands" to defendant.

Plaintiff excepted to the court's findings of fact and conclusions of law and appealed. The Court of Appeals reversed. It held: (1) In providing the landlocked Mashburn property access to Sand Hill Road over the disputed area, plaintiff was acting within its statutory and constitutional authority for a public purpose. (2) The consent order of 20 October 1966 (which defendant did not move to vacate or modify), was res judicata of plaintiff's right to condemn all of tract No. 5. (3) Defendant's withdrawal and retention of the deposit

which plaintiff had made on 11 May 1964 precluded defendant from questioning plaintiff's right to condemn all the lands described on the plan sheets attached to the complaint.

Relying upon G.S. 7A-30(1), defendant appealed to the Supreme Court alleging the violation of rights guaranteed to it by Article I § 17 of the Constitution of North Carolina and the Fourteenth Amendment to the Constitution of the United States.

*Robert Morgan, Attorney General; Harrison Lewis, Deputy Attorney General; and I. B. Hudson, Jr., Trial Attorney, for the State.*

*Bennett, Kelly & Long for defendant appellant.*

SHARP, J.

Defendant bases its right of appeal to this Court upon the premise that plaintiff's taking of the .074-acre tract in dispute involves a substantial constitutional question. *State v. Colson,* 274 N.C. 295, 163 S.E. 2d 376, *cert. denied,* 393 U.S. 1087. The appeal presents this question: In building a controlled-access highway, is the State Highway Commission empowered to condemn land reasonably necessary to furnish access to private property which would otherwise be land-locked by the construction?

An unfortunate, but unavoidable, consequence of the construction of limited-access highways is the destruction of the egress and ingress of abutting landowners. However, by G.S. 136-19, the State Highway Commission is authorized to acquire by purchase, donation, or condemnation such land and interests in land "as it may deem necessary and suitable for road construction, maintenance, and repair, and the necessary approach and ways through."

In the establishment of controlled-access facilities the Highway Commission is also granted leave to condemn private property for "service or frontage roads." G.S. 136-89.52. Such a road is defined as "a way, road or street which is auxiliary to and located on the side of another highway, road or street for service to abutting property and adjacent areas and for the control of access to such other highway, road or street." G.S. 136-89.49. In addition, G.S. 136-18(16) authorizes the Highway Commission to acquire title to land for the purpose of exchanging it for other realty to be used in establishing highways or removing dangerous obstructions at intersections.

[1, 2]   It is elementary law that the Highway Commission can condemn property only for a public purpose and that it cannot take the land of one property owner for the sole purpose of constructing

a road for the private use of another. *Highway Commission v. Batts,* 265 N.C. 346, 144 S.E. 2d 126; *Charlotte v. Heath,* 226 N.C. 750, 40 S.E. 2d 600. Any highway condemnation proceeding, however, may incite controversy as to whether the proposed road will serve a public or private purpose. *Highway Commission v. Thornton,* 271 N.C. 227, 156 S.E. 2d 248; *Highway Commission v. Batts, supra.* This question, when the facts are determined, is one of law for the courts. *Redevelopment Commission v. Bank,* 252 N.C. 595, 114 S.E. 2d 688.

[3] Plaintiff did not purport to condemn the access road into the Mashburn property under G.S. 136-18(16). It retains title to the .074-acre tract in question, which is shown on the official map of Project No. 8.19095 as part of the new right of way of the Sand Hill Road. Thus the constitutionality of G.S. 136-18(16), debated in defendant's brief, is not at issue on this appeal. The "Mashburn road" comes within the statutory definition of a frontage road. G.S. 136-89.49. As such it would also be available to provide access to defendant's abutting property if the nature of the terrain permits. However, at the present time it serves only one individual's land, and the question is whether such a road constitutes a public or a private use.

Defendant, contending that the road serves only a private use relies upon *State Highway Commission v. Batts, supra,* to prevent the taking. The facts in *Batts,* however, bear no relation to this case. In *Batts,* plaintiff sought to condemn land for Project No. 5.322, a secondary road designed to serve five farm properties on which were four houses. The occupants were all members of the Batts family. It was to begin at the boundary of another secondary road and run 3,316 feet to a dead end. In a four-to-three decision, this Court held that the Batts road would serve only a private purpose and proscribed the condemnation. Project 5.322 was entirely a Batts project, instigated by the written request of Mr. and Mrs. Batts. The Mashburn road is auxiliary to, and necessitated by, the construction of Interstate Highway No. 40. It is an incidental part of a comprehensive and complex highway project of national significance.

[4] Even though the principal use of the Mashburn drive is to provide access to private property, the public interest required its establishment, and the public purpose for which the land was taken continues to be accomplished. *Redevelopment Commission v. Bank, supra.* The applicable rule is well stated in 26 Am. Jur. 2d *Eminent Domain* §§ 32, 33 at pages 681, 684 (1966): "[T]he exercise of eminent domain for a public purpose which is primary and paramount will not be defeated by the fact that incidentally a private use or

benefit will result which will not of itself warrant the exercise of a power. . . . The controlling question is whether the paramount reason for the taking of the land to which objection is made is the public interest, to which benefits to private interests are merely incidental, or whether, on the other hand, the private interests are paramount and controlling and the public interests merely incidental."

In *Luke v. Massachusetts Turnpike Authority*, 337 Mass. 304, 149 N.E. 2d 225 (1958), a condemnation proceeding equivalent to the instant case, the Supreme Judicial Court of Massachusetts applied the foregoing rule to an access route such as the Mashburn way. It concluded that its acquisition was merely one incident of the huge undertaking of constructing a turnpike across the State and that it "would be closing the eyes to reality" to say that such an access road served no public purpose. "Procuring an easement and creating a right of way for the benefit of parcels of land incidentally deprived of all or of some means of access to an existing way are but a by-product of that undertaking." *Id.* at 309, 149 N.E. 2d at 228.

In construing a statute containing language almost identical with that of G.S. 136-89.49(3) and G.S. 136-89.52, the Supreme Court of Indiana (relying upon *Luke v. Massachusetts Turnpike Authority, supra*) held that a service road alleviating "a landlocked condition" caused by the construction of a freeway constituted a public use "whether such road served one property owner or many." *Andrews v. State*, 229 N.E. 2d 806 (Ind. 1967). Incidentally, the Court noted that "if the State of Indiana is not in a position to minimize the damages paid to landowners, then the cost of interstate highways would soar astronomically and Indiana would be dotted abnormally with landlocked real estate." *Id.* at 810.

Reason supports the "by-product" rationale, and it has been adopted by the majority of courts deciding the question here presented. The cases are collected and cited in the opinion of the Court of Appeals. *Highway Commission v. School*, 5 N.C. App. 684, 691, 169 S.E. 2d 193, 197. See also *Brown v. United States*, 263 U.S. 78; *Pitznogle v. Western Md. R. R. Co.*, 119 Md. 673; *Smouse v. Kansas City S. Rlw. Co.*, 129 Kan. 176, 282 P. 183.

[5]   We hold that the taking of defendant's .074-acre tract to provide access to the Mashburn land, landlocked by the construction of Interstate Highway No. 40, was for a public purpose and that G.S. 136-19, G.S. 136-89.49, and G.S. 136-89.52 authorized the con-

demnation. This decision renders moot defendant's assignments of error involving the questions of waiver and estoppel by judgment.

The decision of the Court of Appeals is

Affirmed.

MOORE, J., did not participate in the consideration or decision of this case.