PELHAM REALTY CORPORATION AND MODELLE SCISM v. THE BOARD OF TRANSPORTATION (FORMERLY STATE HIGHWAY COMMISSION) OF THE STATE OF NORTH CAROLINA

No. 8017SC463

(Filed 16 December 1980)

**Eminent Domain § 3.2— taking to provide access to property — area remote from highway — no frontage road — no public purpose**

> In plaintiffs' action to enjoin the taking of their property for the building of an access road from old U.S. 29 to the property of Vulcan Materials, Inc., allegedly necessitated by the upgrading of U.S. 29 from a single lane, unlimited access highway to a dual lane, limited access highway, the disputed access road, located as it was in an area remote from and not connecting to or entering at any point on U.S. 29, did not serve to facilitate access by the public or by Vulcan to U.S. 29, did not meet the statutory definition of a "frontage road" as that term is used in Article 6D of Chapter 136 of the General Statutes, was not necessary to provide access because all other access had been denied, and was intended to serve a private and not a public purpose.

APPEAL by plaintiffs from *Long, Judge.* Case docketed in CASWELL County, heard out of term and out of county in Wentworth, ROCKINGHAM County, by consent of the parties. Judgment entered 6 December 1979 in Superior Court. Heard in the Court of Appeals 6 November 1980.

This is a companion case to *Department of Transportation (Department) v. Pelham Realty Corporation* in which the Department initiated proceedings to condemn and take plaintiffs' property. In this case, plaintiffs seek to enjoin the taking. It has been agreed and stipulated by the parties that the record in this case will serve as the proper basis for decision in both cases.

The undisputed portions of the factual background are as follows. Plaintiffs are the owners of a 116 acre tract of land in the northwestern corner of Caswell County near the Virginia state line. Plaintiffs' property is traversed on its western boundary by U. S. Highway 29 and on its eastern boundary by the Southern Railway and old U. S. 29, which parallel each other. The segment of U. S. 29 traversing plaintiffs' property is in the process of being upgraded from a single lane, unlimited access highway to a dual lane, limited access highway. Vulcan Materials, Inc. (Vulcan) owns a large tract of land lying adjacent to and north of plaintiffs' property. Vulcan's property lies between plaintiffs' property and the Virginia state line, and

extends significantly into the State of Virginia. In the process of upgrading U. S. 29, it was necessary for the Department to acquire a substantial portion of that area of Vulcan's property which fronted on U. S. 29. As a result Vulcan was denied its direct and previously unlimited access to the portion of U. S. 29 traversing its property. Vulcan did, however, retain access to its property from a public road in Virginia. To provide access from Vulcan's property to U. S. 29 the Department studied the feasibility of constructing a service or frontal road across the part of Vulcan's property immediately adjacent to the upgraded, limited access stretch of U. S. 29. These plans were abandoned in favor of building an access road to the Vulcan property adjacent to and paralleling the Southern Railway, near old U. S. 29, approximately four tenths of a mile east of U. S. 29. In order to build the access road to Vulcan's property, it was necessary for the Department to either purchase or take a strip of plaintiffs' property.

Subsequent to the Department's declaration of taking and the initiation of plaintiffs' action, the matter was heard before Judge Long without a jury. Judge Long made extensive findings of fact. On these findings, in the Department's action, he concluded that the taking of plaintiffs' land was for a public purpose and that the Department was entitled to prosecute its action to take plaintiffs' land. In plaintiffs' action, Judge Long concluded that the taking was for a public purpose, and denied plaintiffs' application for a permanent injunction.

*Tuggle, Duggins, Meschan, Thornton & Elrod, P.A., by David F. Meschan, for plaintiff appellants.*

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Charles M. Hensey, for the State.*

WELLS, Judge.

To put this dispute in clear perspective, we note that Judge Long's first conclusion of law was as follows: "1. Pursuant to G.S. 136-89.55, the Department of Transportation may construct such service road as in its opinion are [*sic*] necessary or desirable."

Article 6D of Chapter 136 of the General Statutes, entitled Controlled-Access Facilities, is the source of authority under which the Department may construct and maintain "a State highway, or section of State highway, especially designed for through traffic, and over, from or to which highway owners or occupants of abutting property,

*Realty Corp. v. Bd. of Transportation*

or others, shall have only a controlled right or easement of access."[1] G.S. 136-89.55 is contained in Article 6D and in pertinent part reads as follows: "In connection with the development of any controlled-access facility the Board[2] of Transportation is authorized to plan, designate, establish, use, regulate, alter, improve, maintain, and vacate local service or frontage roads and streets . . . ."

G.S. 136-89.49(3) defines a frontage road as follows: "'Frontage road' means a way, road or street which is auxiliary to and located on the side of another highway, road or street for service to abutting property and adjacent areas and for the control of access to such other highway, road or street." We note that the statutory definition of a "frontage road" does not include the words "service road", but that these terms are used synonymously throughout the article. For example, G.S. 136-89.52 provides that "the Department of Transportation may acquire private or public property and property rights for controlled-access facilities and service or frontage roads . . . ."

It is clear from the record and the Department's brief that the Department seeks to justify the disputed road as a frontage or service road constructed as a part of the over-all project designed to upgrade a segment of U. S. 29 into a controlled-access facility. Due to its location at a considerable distance from the primary controlled-access facility, it does not appear that this particular road is a "frontage road", as that term is used in the statute. Absent other justification, it would thus not appear that the disputed road has a public purpose. The Department argues, however, that under previous decisions of our Supreme Court, the public purpose doctrine has been expanded to include roads which are "by-products" of the construction of controlled-access facilities if such roads provide access to property which would otherwise be "landlocked" by the controlled-access construction. The "by-product" rationale was enunciated by the Court in *Highway Comm. v. School,* 276 N.C. 556, 173 S.E. 2d 909 (1970), hereinafter referred to as "Asheville School".

In *Asheville School,* the disputed road, although located in the immediate vicinity of Interstate 40, a major controlled-access facility,

---

[1] G.S. 136-89.49(2)

[2] Now Department

did not in the ordinary sense meet the statutory definition of a "frontage road". It was, in fact, a relatively short driveway leading from a frontage road into the residence of the Marshburns, whose property would have been completely landlocked[3] by the construction of Interstate 40. The keystone on which the *Asheville School* rationale hinged is the landlocked condition of the property to be served by the disputed road. In *Asheville School,* there was no question that the Marshburn property was cut off from *all* public access. Similarly, in two cases relied upon by the court in *Asheville School*[4], the disputed roads, built incidentally to the construction of controlled-access facilities, were built to serve property which would have otherwise been completely landlocked. Such is not the case here.

It is not disputed that the Vulcan property has access to a public road in Virginia. The Department argues that this aspect of this case is not controlling. Its position is that the Vulcan tract would be denied its previous access to U. S. 29 *in North Carolina* and that when the Department took Vulcan's North Carolina access, it was obliged to consider the property as landlocked. The Department's argument is not inherently unsound. North Carolina is a large state, with a diverse topography interspersed with mountains, streams, lakes, pocosins, and sounds. In such a physical environment, the term "landlocked" must be and is susceptible of various and relatively different shades of meaning and interpretation. We do not wish to lock the Department into any rigid, unyielding definition of "landlocked".

The evidence in this case clearly shows, however, that in the sense that term was used in *Asheville School,* Vulcan's property was not, in fact, landlocked *in North Carolina.* Vulcan's property fronts for a considerable distance along U. S. 29, where the Department originally contemplated constructing a frontage road to replace the access being denied Vulcan by the upgrading of U. S. 29 to a controlled-access facility. The topography of the land adjacent to U. S. 29 was such, however, that the Department chose to locate the "frontage" road to provide access to the "back" portion of Vulcan's property, near the railroad. The location of this "frontage" road was chosen because it

---

[3] i.e., denied any access to any public road.

[4] *Luke v. Massachusetts Turnpike Authority,* 337 Mass. 304, 149 N.E.2d 255 (1958) and *Andrews v. State,* 229 N.E.2d 806 (Ind. 1967).

would be less expensive to build it there, and, as the evidence shows, because Vulcan preferred it there.

We thus arrive at the denouement in this case. The project necessitated the acquisition of property from Vulcan fronting on U. S. 29. Having been denied its previously existing access, Vulcan was entitled to be compensated not only for its land needed for the project but also for its loss of access. Our Supreme Court's decision in *Asheville School* makes it clear that the Department, in order to avoid having to pay Vulcan exorbitant compensation for the denial of access, may instead provide substitute access. The evidence in this case makes it clear that the Department exercised its discretion in such a manner. For the land and access rights acquired from Vulcan in the project, the Department agreed to pay Vulcan $31,000.00 in cash and to construct a 4,200 foot access road to Vulcan's property.

It is at this point that this case becomes much more complicated. Primarily for economic reasons, the Department chose the disputed location rather than the location near and paralleling U. S. 29. We quote the pertinent findings of fact from Judge Long's order:

> A frontage road lying immediately adjacent to new U. S. Highway 29 and providing substitute access to those parcels of land lying north of N.C. 700 on the east of existing U. S. Highway 29 was estimated to cost, due to topography, over $140,000.00, and such a road was expected to be only minimally adequate.
>
> A service road lying adjacent to the railroad right-of-way for the Southern Railroad had an estimated construction cost of approximately $60,000.00 and could provide substitute access for those parcels losing access to existing new U. S. Highway 29 by reason of the construction of State Highway Project 8.1592901.
>
> A total savings in right-of-way costs for those parcels of land to be served by the proposed service road was estimated to be $171,774.00 by Department of Transportation officials, yielding an estimate net savings to the taxpaying public of North Carolina of more than $100,000.00 in right-of-way costs for State Highway Project 8.1592901.

These findings of fact indicate that by "relocating" the

service road, the Department could effect a total savings of approximately $180,000.00. While plaintiffs dispute these findings, we believe them to be supported by the evidence. We do not conclude, however, that these findings support Judge Long's conclusion that the taking of plaintiffs' land was for a public purpose. The Department has the authority to procure by condemnation only such rights-of-way or lands as are necessary to properly prosecute and complete the project. While we conclude that the Department had the authority to construct the originally proposed frontal road adjacent to U. S. 29 to provide access to Vulcan's property, the question is whether the construction of this road in its disputed location was such a deviation from this project as to remove it from the scope of the project. We think that the answer must be that it was. We do not hold that there were no circumstances under which a "frontage road" may be located some distance from a controlled-access facility due to the requirements of topography, geography or protection of the natural environment. As indicated earlier in this opinion, we also recognize that the service or frontal road may legitimately serve but one landowner or parcel of land, as was the case in *Asheville School,* if as a by-product of the controlled-access construction, the affected parcel of land is denied all access. In such cases, however, the evidence must show that the proposed road either meets the statutory definition of a frontal road, or, that it was constructed to provide access where all other access has been denied.

We hold that the location of the disputed road in this case, located as it is in an area remote from and not connecting to or entering at any point on U. S. 29, does not serve to facilitate access by the public or by Vulcan to U. S. 29, does not meet the statutory definition of a "frontage road" as that term is used in Article 6D of Chapter 136 of the General Statutes, and, that in the disputed location, it is intended to serve a private, not a public, purpose. *See Highway Commission v. Batts,* 265 N.C. 346, 144 S.E. 2d 126 (1965).

Due to the nature of our holding, we do not reach or deal with plaintiffs' interesting argument that the taking in this case would constitute a substitute condemnation.[5]

The judgment of the trial court is reversed and this case is remanded for the purpose of entry of an order permanently enjoining

---

[5] *See Highway Comm. v. Equipment Co.,* 281 N.C. 459, 189 S.E.2d 272 (1972).

the taking of plaintiffs' property for the disputed road at its presently proposed location.

Judges VAUGHN and MARTIN (Robert) concur.